UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JAMES REDWOOD,

             Petitioner,                       Case Number 07-10587
                                                   Honorable David M. Lawson

v.

MILLICENT WARREN,

             Respondent.
_____/

## OPINION AND ORDER DENYING THE PETITION FOR WRIT OF HABEAS CORPUS

The petitioner, James Marshall Redwood, presently confined at the Thumb Correctional

Facility in Lapeer, Michigan, has filed a *pro se* petition for a writ of habeas corpus pursuant to 28

U.S.C. § 2254. The petitioner was convicted by a jury in the Saginaw County, Michigan circuit

court of one count of armed robbery, one count of carjacking, one count of kidnapping, two counts

of extortion, one count of first-degree criminal sexual conduct, one count of felonious assault, and

one count of carrying a dangerous weapon with unlawful intent. The petitioner was sentenced as

a fourth felony habitual offender to concurrent terms of sixty to one hundred ten years imprisonment

on the robbery, carjacking, kidnapping, and first-degree criminal sexual conduct convictions, twelve

to twenty five years imprisonment for the extortion convictions, and five to fifteen years

imprisonment for the felonious assault and carrying a dangerous weapon with unlawful intent

convictions. The petitioner alleges that there was insufficient evidence to convict him of carjacking,

the trial court judge abused his discretion by imposing a sentence that was not reasonably possible

for the defendant to serve, the sentences imposed were disproportionate, the legislatively imposed

mandate that the Michigan Court of Appeals must affirm sentences that are imposed within the

sentencing guidelines range is unconstitutional, the prosecutor committed various forms of

misconduct, the trial court erred by failing to dismiss the petitioner's extortion charges on the basis of Double Jeopardy, the petitioner was deprived of the effective assistance of trial counsel, the petitioner could not be convicted of first-degree criminal sexual conduct because the victim was his wife, the trial court erred by failing to issue a directed verdict of not guilty on the armed robbery count, the trial court judge erred in omitting an instruction on the asportation element required for kidnapping, the petitioner's sentencing guidelines were incorrectly scored, and the petitioner's sentence was enhanced with convictions that were obtained without the benefit of counsel. The respondent filed an answer to the petition, asserting that the claims are procedurally defaulted or lack merit. The Court agrees that petitioner's claims are meritless; therefore, the petition will be denied.

I.

The petitioner was convicted of the above offenses following a jury trial in the Saginaw, Michigan. The Michigan Court of Appeals provided a detailed statement of facts in its opinion affirming the petitioner's conviction:

> According to the prosecution's theory of the case, defendant was living with one of the complainants, Michael Newman [who is a quadriplegic], when, on November 14, 2000, defendant became enraged when Newman refused to drive him to the bus station. Defendant allegedly held a knife to Newman's throat and demanded money from him. He then forced Newman's caretaker, Paul Hammer, to leave with him in Newman's van by threatening Newman with the knife. After initially heading toward Saginaw, defendant changed his mind and proceeded to the residence of his estranged wife, Christine Redwood, who recently had revealed to defendant her intent to return to her ex-husband, Michael Larkin. Along the way, defendant allegedly forced Hammer to perform errands for him. When the two arrived at Redwood's residence, defendant again used the knife to force Redwood to accompany both him and Hammer to a motel in Clio, where defendant gave Hammer money to obtain a room. Defendant and the others then went into the room where they smoked crack cocaine. At that point, defendant allowed Hammer to leave, after again threatening him. Hammer thereafter drove the van back to Newman's residence and called the police. After Hammer left, defendant allegedly forced Redwood to have sexual intercourse with him and perform other nonconsensual sexual acts. The police subsequently arrived at the motel and apprehended

defendant.  Defendant maintained that he only took money from Newman that was owed to him because he had previously paid Newman's outstanding crack cocaine debt.  Defendant also claimed that Redwood and Hammer accompanied him freely, because they wanted to smoke crack cocaine.

*People v. Redwood,* 2003 WL 22204870, at *1 (Mich. Ct. App. Sept. 23, 2003).  The petitioner was convicted by a jury of the charged offenses summarized above, although the jury acquitted him of one count of kidnapping and three counts of first-degree criminal sexual conduct.  He was sentenced as a fourth felony habitual offender.

On direct appeal to the Michigan Court of Appeals, the petitioner raised the following issues:

I. Should the defendant's conviction for carjacking be overturned because there was insufficient credible evidence at trial to prove that the defendant either used force or threats to take the car or that the defendant took it from the owner's presence?

II. Did the trial judge abuse his discretion by fashioning a sentence length which it is not reasonably possible for the defendant to serve, thus violating the statutory and case law requirements for an indeterminant sentence?

III. Were the defendant's sentences were disproportionate and therefore must be reversed and Defendant must be resentenced?

IV. Is the legislatively imposed mandate that the court of appeals must affirm sentences which are imposed within the guidelines (MCL 769.34(10)) unconstitutional?

V. Did the prosecutor's actions [deny] the defendant a fair trial and his due process rights?

VI. Did the court err by submitting the charges of extortion, as well as kidnap[p]ing and CSC to the jury without instructions indicating that the defendant could not be convicted of both extortion and kidnap[p]ing or extortion and CSC, and did the trial court err by denying defendant's motion to dismiss the extortion charges on grounds of double jeopardy?

VII.  If issues raised in this brief are not considered because of a lack of objections, is the defendant entitled to a new trial because of ineffective assistance of trial counsel?

Def.-Appellant's Br. on Appeal, at xiii-ix. The petitioner's convictions were affirmed by the court of appeals in an unpublished decision, and the Michigan Supreme Court denied leave to appeal. *People v. Redwood*, 469 Mich. 1027, 679 N.W.2d 63 (2004) (table).

The petitioner then sought post-conviction relief pursuant to Mich. Ct. R. 6.500, which was denied by the trial court. The petitioner appealed this denial, raising the following grounds:

> I. Did trial judge err by permitting defendant to be brought before a jury when defendant met none of the criteria and elements necessary to establish rape on his wife and defense counsel was so ineffective that he failed to read the statute under which his client was tried?
>
> II. Did trial judge err in not issuing a directed verdict instruction to the jury to find defendant not guilty of armed robbery as this is a specific intent crime which element is essential; one of larcenous intent and defense counsel was ineffective for failure to move for a directed verdict as well as appellant counsel's failure to raise this fundamental statutory element on direct appeal?
>
> III. Did trial judge err by the omission of instructing the jury on asportation in kidnapping, as well as defense counsel ineffective by not objecting to such a fundamental right of defendant to include this element to a jury which is essential in a kidnapping case as well as appellate counsel ineffective for not raising such a fundamental right on direct appeal?
>
> IV. Did trial court err by enhancing petitioner's sentence when defense counsel was not afforded [to] petitioner and misdemeanors as well as felonies resulted in loss of liberty; using convictions that were beyond legal time limits to use in both the five and ten year range; and was appellate counsel ineffective for not raising these issues on direct appeal although many of them were preserved by objection of defense counsel?

Pet.'s Mot. for Relief from Judgment at 4, 8, 11, 17. The Michigan appellate courts denied petitioner leave to appeal. *People v. Redwood,* No. 267414, slip op. at 1 (Mich. Ct. App. Dec. 28, 2006), *lv. den.* 477 Mich. 974, 725 N.W.2d 27 (Dec. 28, 2006) (table).

The petitioner now seeks a writ of habeas corpus on the following grounds:

I. Should the defendant's conviction for carjacking be overturned because there was insufficient credible evidence at trial to prove that the Defendant either used force or threats to take the car or that the Defendant took it from the owner's presence?

II. Did the trial judge abuse his discretion by fashioning a sentence length which it is not reasonably possible for the defendant to serve, thus violating the statutory and case law requirements for an indeterminant sentence?

III. Were the defendant's sentences disproportionate and therefore must be reversed and defendant must be resentenced?

IV. Is the legislatively imposed mandate that the Court of Appeals must affirm sentences which are imposed within the guidelines (MCL 769.34(10)) unconstitutional?

V. Did the prosecutor's actions [deny] the defendant a fair trial and his due process rights?

VI. Did the court err by submitting the charges of extortion, as well as kidnap[p]ing and CSC to the jury without instructions indicating that the defendant could not be convicted of both extortion and kidnap[p]ing or extortion and CSC, and did the trial court err by denying defendant's motion to dismiss the extortion charges on grounds of double jeopardy?

VII. If issues raised in this brief are not considered because of a lack of objections, is the defendant entitled to a new trial because of ineffective assistance of trial counsel?

Pet. at xiii-xiv. Although the statement of questions presented in the petitioner's habeas brief lists only Claims I through VII, the petitioner nonetheless apparently seeks habeas review of Claims VIII through XI as well, as he later briefs those arguments and notes that "the following arguments are those that were raised during Petitioner [*sic*] Collateral Attack of his Convictions – Mich. Ct. R. 6.500." Br. in Support of Pet. at 50. He identifies these claims as follows:

VIII. Petitioner directs the courts to Michigan Statute 750.520(L) which states: "An actor does not commit first through fourth degree CSC if victim is his or her legal spouse unless parties are living apart and one of them has filed for separate maintenance or divorce. [ . . . ] Prosecution known or should have known that petitioner co[u]ld not be charged with Criminal Sexual Conduct. The District Court

-5-

knew o[r] should have known [this as well, and trial and appellate counsel should have known the defendant was wrongly charged.]

IX.  The trial court erred in not issuing a directed verdict to the jury to find Defendant not guilty of armed robbery as this charged is a specific intent crime which element is essential: That of Larcenous Intent.  Defense counsel was ineffective for failure to move for same as well as appellate counsel for failure to raise this fundamental statutory element on direct appeal.

X. Petitioner submits that the failure of trial judge to instruct the jury on asporatation [*sic*] is a violation of fundamental rights under both the Michigan Constitution and the United States Constitution.

XI. Petitioner was scored 10 points under 0V4.  As is discovered the instructions for scoring these points are ambiguous and completely subjective. . . . This is double speak in its purest form as the entire affair rests on the whim of the judge at a particular moment. [ . . . ] Petitioner's sentence was enhanced by using conviction in which he was not represented by counsel and all were loss of liberty case. [ . . . ] Petitioner submits that the failure of appellate counsel to raise this issue is ineffective under the Strickland standard.

The respondent filed an answer arguing that claims I – VII lacked merit or were not cognizable on habeas review, and arguing that claims VIII through XI were procedurally defaulted.

## II.

The respondent contends that the petitioner's eighth, ninth, tenth, and eleventh claims are procedurally defaulted because the petitioner raised these claims for the first time in his post-conviction motion for relief from judgment and failed to show cause and prejudice for failing to raise these claims in his direct appeal, as required by Mich. Ct. R. 6.508(D)(3).

"[F]ederal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits."  *Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir. 2003) (citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997)).  "Judicial economy might counsel giving the [other] question priority, for example, if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law."  *Lambrix*, 520 U.S. at

525; *cf.* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.")  In this case, the Court finds that the interests of judicial economy are best served by addressing the merits of these claims.

III.

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996), which govern this case, "circumscribe[d]" the standard of review federal courts must apply when considering applications for a writ of habeas corpus raising constitutional claims, including claims of ineffective assistance of counsel. *See Wiggins v. Smith*, 539 U.S. 510, 520 (2003).  As amended, 28 U.S.C. § 2254(d) permits a federal court to issue the writ only if the state court decision on a federal issue "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court," or it amounted to "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(1) & (2); *Franklin v. Francis*, 144 F.3d 429, 433 (6th Cir. 1998).  Mere error by the state court will not justify issuance of the writ; rather, the state court's application of federal law "must have been objectively unreasonable." *Wiggins*, 539 U.S. at 520-21 (quoting *Williams v. Taylor*, 529 U.S. 362, 409 (2000) (internal quotes omitted)).  Additionally, this Court must presume the correctness of state court factual determinations.  28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct."); *see also West v. Seabold*,

73 F.3d 81, 84 (6th Cir. 1996) (stating that "[t]he court gives complete deference to state court findings of historical fact unless they are clearly erroneous").

The Supreme Court has explained the proper application of the "contrary to" clause as follows:

> A state-court decision will certainly be contrary to [the Supreme Court's] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases. . . .
>
> A state-court decision will also be contrary to this Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from [the Court's] precedent.

*Williams*, 529 U.S. at 405-06.

The Supreme Court has held that a federal court should analyze a claim for habeas corpus relief under the "unreasonable application" clause of § 2254(d)(1) "when a state-court decision unreasonably applies the law of this Court to the facts of a prisoner's case." *Id.* at 409. The Court defined "unreasonable application" as follows:

> [A] federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable. . . .
>
> [A]n *unreasonable* application of federal law is different from an *incorrect* application of federal law. . . . Under § 2254(d)(1)'s "unreasonable application" clause, then, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.

*Id.* at 409-11; *see also Knowles v. Mirzayance*, __ U.S. __, __, 129 S. Ct. 1411, 1419 (2009) (noting that the Supreme "Court has held on numerous occasions that it is not "'"an unreasonable application of clearly established Federal law'"" for a state court to decline to apply a specific legal rule that has

-8-

not been squarely established by this Court") (quoting *Wright v. Van Patten*, 552 U.S. 120, 125-26 (2008) (per curiam)); *Murphy v. Ohio*, 551 F.3d 485, 493-94 (6th Cir. 2009); *Eady v. Morgan*, 515 F.3d 587, 594-95 (6th Cir. 2008); *Davis v. Coyle*, 475 F.3d 761, 766-67 (6th Cir. 2007); *King v. Bobby*, 433 F.3d 483, 489 (6th Cir. 2006); *Rockwell v. Yukins*, 341 F.3d 507, 512 (6th Cir. 2003) (en banc).

## A.

The petitioner's first and ninth claims challenge the sufficiency of evidence presented against him. In his first claim, he contends that the prosecution failed to introduce sufficient evidence to convict him of carjacking. In his ninth claim, he claims there was insufficient evidence for a jury to find him guilty of armed robbery.

It is beyond question that "the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). The critical inquiry on habeas review of the sufficiency of the evidence to support a criminal conviction is

> whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt. [T]his inquiry does not require a court to 'ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.' Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

*Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979) (internal citation and footnote omitted) (emphasis in original). A federal court may not reweigh the evidence or redetermine the credibility of the witnesses. *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983). "It is the province of the factfinder to weigh the probative value of the evidence and resolve any conflicts in testimony." *Matthews v. Abramajtys*, 319 F.3d 780, 788 (6th Cir. 2003) (citing *Neal v. Morris*, 972 F.2d 675, 679 (6th Cir.

1992)).  A habeas court must defer to the fact finder for its assessment of the credibility of witnesses.  *Ibid.*  The Court does not need to be convinced that the petitioner is actually guilty beyond a reasonable doubt.  *Walker v. Russell*, 57 F.3d 472, 475 (6th Cir. 1995).  The sufficiency of evidence "standard must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law," *Jackson*, 443 U.S. at 324 n.16, and through the framework of 28 U.S.C. § 2254(d).  *Martin v. Mitchell*, 280 F.3d 594, 617 (6th Cir. 2002).  Therefore, a court reviewing a claim of insufficient evidence on habeas review must accord "deference at two levels . . . first, to the jury's verdict as contemplated by *Jackson*, and, second, to the state court's consideration of the jury's verdict as dictated by AEDPA."  *Parker v. Renico*, 506 F.3d 444, 448 (6th Cir. 2007) (internal citations omitted).

## 1.

The petitioner argues that the carjacking conviction was not proven because the evidence failed to show that Newman's van was taken from Newman's presence, since Newman was confined in bed at the time.  The petitioner further contends that there was insufficient evidence presented to show that he took Newman's van by force.

Under state law, the elements of carjacking require proof that (1) the defendant took a motor vehicle from another person; (2) the defendant did so in the presence of that person, a passenger, or any other person in lawful possession of the motor vehicle; and (3) the defendant did so either by force or violence, by threat of force or violence, or by putting the other person in fear.  *People v. Davenport*, 230 Mich. App. 577, 579, 583 N.W.2d 919, 921 (1998).  An automobile is considered to be in the "presence" of another when it is shown that the automobile "is within his reach, inspection, observation or control, that he could, if not overcome by violence or prevented by fear,

retain his possession of it." *People v. Raper*, 222 Mich. App. 475, 482, 563 N.W.2d 709, 712 (1997) (citations omitted). Thus, "whether the taking of a motor vehicle occurs within the presence of a person[ ] depends on the effect of violence or fear on that person's ability to control his possession of the motor vehicle at the time of its taking." *People v. Green*, 228 Mich. App. 684, 695, 580 N.W.2d 444, 450 (1998).

The Michigan Court of Appeals rejected the petitioner's claim because the evidence showed that at the time the petitioner threatened Newman with the knife, Newman was in possession of the keys to the van and therefore had control over the vehicle. The court of appeals concluded that a rational trier of fact could find that the petitioner obtained possession and control of the van in Newman's presence by threatening him with a knife and causing him to surrender the keys to the van to the petitioner. The court rejected the petitioner's argument that the prosecution failed to prove the element of force. It reasoned that although the petitioner could have taken the keys without force, since Newman was incapable of resisting, Newman's account of the incident was sufficient for a jury to find beyond a reasonable doubt that petitioner obtained the van by use of force.

The state court's analysis is sound and firmly grounded in the record. It reasonably applies *Jackson*. This Court finds no basis to upset the conviction for carjacking.

2.

The petitioner argues that the armed robbery count was not proven, and trial counsel was ineffective for not moving for a directed verdict, because the petitioner had a claim of right to Newman's money.

The elements of armed robbery under Michigan law are: "(1) an assault, (2) a felonious taking of property from the victim's presence or person, (3) while the defendant is armed with a weapon described in the statute." *People v. Carines*, 460 Mich. 750, 757, 597 N.W.2d 130, 135 (1999) (internal quotations and citation omitted); *see also* Mich. Comp. Laws § 750.529. Felonious intent is an element of armed robbery in Michigan. Therefore, if a defendant believes in good faith that the money he demands from the victim is his money or that he is entitled to possession of it, he cannot be guilty of robbery, despite the use of force, because the felonious intent would be absent. *People v. Holcomb,* 395 Mich. 326, 333, 235 N.W.2d 343, 346 (1975) (quoting *People v. Henry,* 202 Mich. 450, 455, 168 N.W. 534, 536 (1918)).

The petitioner contends that the trial court should have entered a directed verdict in his favor, claiming in effect that the prosecution failed to prove the elements of the crime beyond a reasonable doubt. *See Tinsley v. Million*, 399 F.3d 796, 815 (6th Cir. 2005) (treating a claim that the trial court failed to grant a motion for a directed verdict as a challenge to the sufficiency of evidence). The problem with the petitioner's argument is that the trial evidence does not support it. Michael Newman testified that petitioner took his money from him without permission and that this money was from his disability check. Newman also testified that he did not owe the petitioner any money, and the petitioner never stated that he was owed the money when he attacked Newman. The petitioner testified that he had a claim of right to the money, but the jury was entitled to disbelieve the petitioner's testimony and accept Newman's. Consequently, the evidence supports the conviction and the trial court did not err by denying the motion for a directed verdict. The petitioner is not entitled to habeas relief on his ninth claim.

B.

In his related second and third claims, petitioner contends that his enhanced sentences of sixty to one hundred ten years for his robbery, carjacking, kidnapping, and first-degree criminal sexual conduct convictions are invalid because they are disproportionate and, given his age, he will not be reasonably able to serve out the minimum terms.

A habeas petitioner challenging the severity of a prison sentence on Eighth Amendment grounds faces a formidable task. He may obtain relief only by demonstrating that a state court decision contravened or misapplied "clearly established" Supreme Court precedent. However, the Supreme Court recently acknowledged "that our precedents in this area have not been a model of clarity." *Lockyer v. Andrade*, 538 U.S. 63, 72 (2003). "Indeed, in determining whether a particular sentence for a term of years can violate the Eighth Amendment, we have not established a clear or consistent path for courts to follow." *Ibid.* The Supreme Court declared that the general applicability of the proportionality standard to term-of-years sentences was clearly established, but confessed a lack of clarity as to the factors lower courts should consider in making that determination. *Ibid.* The Court concluded that "the only relevant clearly established law amenable to the 'contrary to' or 'unreasonable application of' framework is the gross disproportionality principle, the precise contours of which are unclear, applicable only in the 'exceedingly rare' and 'extreme' case." *Ibid.*

There is no constitutional right to strict proportionality in sentencing. *Harmelin v. Michigan*, 501 U.S. 957 (1997). However, the Eighth Amendment does prohibit "extreme sentences that are 'grossly disproportionate' to the crime." *Id.* at 1001 (Kennedy, J., concurring) (citation omitted). The Sixth Circuit has held that "a sentence within the statutory maximum set by statute generally does not constitute 'cruel and unusual punishment.'" *United States v. Organek*, 65 F.3d 60, 62-63

(6th Cir. 1995); *see also Hutto v. Davis*, 454 U.S. 370, 374 (1982) (holding that "federal courts should be reluctant to review legislatively mandated terms of imprisonment and that successful challenges to the proportionality of particular sentences should be exceedingly rare") (internal quotation marks and citations omitted); *United States v. Williams*, 15 F.3d 1356, 1364 (6th Cir. 1994) (holding that generally, a sentence within statutory limitations does not violate the Eighth Amendment).

"Outside the context of capital punishment, successful challenges to the proportionality of particular sentences have been exceedingly rare." *Rummel v. Estelle*, 445 U.S. 263, 272 (1980). The Supreme Court overturned a life sentence in *Solem v. Helm*, 463 U.S. 277 (1983), on the ground that it was significantly disproportionate to the crime and therefore prohibited by the Eighth Amendment. However, Helm had been sentenced to life imprisonment *without* the possibility of parole for uttering a "no account" check for $100, and his prior felonies were minor, nonviolent crimes. In contrast, the Supreme Court recently reaffirmed *Rummel* and found constitutionally proper a sentence of twenty-five years to life imposed upon a fifth felony conviction. *See Ewing v. California*, 538 U.S. 11, 24-31 (2003).

The petitioner was sentenced as a fourth habitual felony offender to sixty to one hundred ten years for armed robbery, carjacking, kidnapping, and first-degree criminal sexual conduct. The petitioner had nine prior felony convictions at the time of his sentencing. He assaulted Michael Newman, a quadriplegic, at knifepoint while he lay helpless on a bed; threatened Paul Hammer with the knife as he forced him to drive around town on various errands; took Hammer and Christine Redwood to a motel room, where he continued to threaten them; and ultimately sexually assaulted Redwood.

The challenged sentence fell within the maximum sentence set by state law, and "a sentence within the statutory maximum set by statute generally does not constitute 'cruel and unusual punishment.'" *Organek,* 65 F.3d at 62-63 (citation omitted). "As long as the sentence remains within the statutory limits, trial courts have historically been given wide discretion in determining 'the type and extent of punishment for convicted defendants.'" *Austin v. Jackson,* 213 F.3d 298, 301 (6th Cir. 2000) (quoting *Williams v. New York,* 337 U.S. 241, 245 (1949)). The petitioner's lengthy criminal history and his conduct on the day of his multiple crimes entitled the State "to place upon [him] the onus of one who is simply unable to bring his conduct within the social norms prescribed by the criminal law of the State." *Ewing*, 538 U.S. at 30 (quoting *Rummel,* 445 U.S. at 284). Morever, because the Supreme Court in *Harmelin* concluded that a sentence of life imprisonment without parole for the offense of possession of more than 650 grams of cocaine was constitutional, this Court concludes that petitioner's sentence of sixty to one hundred ten years for these violent offenses is not extreme or grossly disproportionate to the offense or to the offender.

The fact that the minimum sentence of sixty years may exceed petitioner's life expectancy does not alter this Court's analysis. In rejecting a similar claim in a direct appeal from a federal criminal conviction, the Sixth Circuit has noted that "[t]he Supreme Court has never held that a sentence to a specific term of years, even if it might turn out to be more than the reasonable life expectancy of the defendant, constitutes cruel and unusual punishment." *United States v. Beverly,* 369 F.3d 516, 537 (6th Cir. 2004) (citing *Harmelin,* 501 U.S. at 996). The petitioner is not entitled to habeas relief on his second and third claims.

## C.

In his fourth claim, the petitioner contends that Mich. Comp. Laws § 769.34(10), which requires affirmance of within-guideline sentences, is unconstitutional, because it violates the right to appeal as granted by the Michigan Constitution and the separation of powers doctrine stated in the Michigan Constitution. Section 769.34(10) states:

> "If a minimum sentence is within the appropriate guidelines sentence range, the court of appeals shall affirm that sentence and shall not remand for resentencing absent an error in scoring the sentencing guidelines or inaccurate information relied upon in determining the defendant's sentence."

The petitioner's claim that section 769.34(10) violates the separation of powers between the legislative and judicial branches of the State of Michigan is not cognizable on habeas review because the inter-branch relations of a state government is a matter of state law. *See Austin,* 213 F.3d at 302. A violation of the state constitution would not entitle the petitioner to federal habeas relief.

The petitioner is not entitled to relief on his claim that the state statute violates his federal constitutional right to appeal his sentence because there is no such right. *See Abney v. United States*, 431 U.S. 651, 656 (1977); *cf. Smith v. Robbins,* 528 U.S. 259, 270 n.5 (2000) (holding that the Constitution does not require states to create appellate review in criminal cases). The right of appeal, as it presently exists in criminal cases, "is purely a creature of statute," and "in order to exercise that statutory right . . . one must come within the terms of the applicable statute." *Abney*, 431 U.S. at 656.

At one point in Michigan's jurisprudential history, there was no right to appeal a sentence that was within statutory bounds. *See People v. Coles*, 417 Mich. 523, 528-34, 339 N.W.2d 440, 443-45 (1983). The Michigan Legislature's decision to enact a statute that allows limited review

of sentences, exclusive of those that fall with the state-created sentencing guidelines, does not violate the petitioner's federal constitutional rights since the petitioner has no federal constitutional right to appeal. The Supreme Court has recognized that "[o]rdinarily, a sentence within statutory limits is beyond appellate review." *Zant v. Stevens*, 462 U.S. 862, 901 (1983). Michigan's codification of this rule through the adoption of Mich. Comp. Laws § 769.34(10) is not contrary to clearly established federal law. The petitioner is not entitled to habeas relief on this claim.

## D.

In his fifth claim, the petitioner contends that he was deprived of a fair trial because of prosecutorial misconduct. He alleges that the prosecutor committed misconduct by introducing improper "other acts" evidence against him; disparaging his counsel during closing argument; and asking him questions on cross-examination about his employment status. In his seventh claim, he argues that the failure to object to these transgressions constitutes ineffective assistance of counsel.

"Claims of prosecutorial misconduct are reviewed deferentially on habeas review." *Millender v. Adams*, 376 F.3d 520, 528 (6th Cir. 2004) (citing *Bowling v. Parker*, 344 F.3d 487, 512 (6th Cir. 2003)). Prosecutorial misconduct will form the basis for habeas relief only if the conduct was so egregious as to render the entire trial fundamentally unfair based on the totality of the circumstances. *Donnelly v. DeChristoforo*, 416 U.S. 637, 643-45 (1974); *Caldwell v. Russell*, 181 F.3d 731, 736 (6th Cir. 1999) (stating that "[p]rosecutorial misconduct may warrant habeas relief only if the relevant misstatements were so egregious as to render the entire trial fundamentally unfair to a degree tantamount to a due process deprivation"). The determination whether the trial was fundamentally unfair is "made by evaluating the totality of the circumstances surrounding each individual case." *Angel v. Overberg*, 682 F.2d 605, 608 (6th Cir. 1982) (citation omitted). The Court

must focus on "'the fairness of the trial, not the culpability of the prosecutor.'" *Pritchett v. Pitcher*, 117 F.3d 959, 964 (6th Cir. 1997) (quoting *Serra v. Mich. Dep't of Corr.*, 4 F.3d 1348, 1355 (6th Cir. 1993)).

The petitioner contends that the prosecutor violated Michigan Rule of Evidence 404(b) by introducing evidence that the petitioner had smoked crack cocaine, had trespassed at Kelly Duncan's residence the night prior to the crimes, and that both Duncan and Christine Redwood were afraid of the petitioner. The Michigan Court of Appeals rejected the petitioner's claim on several grounds. First, the court held that the petitioner failed to make any attempt to explain how "this apparent evidentiary issue constitutes misconduct, given that misconduct generally may not be based upon a prosecutor's good-faith effort to admit evidence." *People v. Redwood*, No. 238120, 2003 WL 22204870, at *2 (Mich. Ct. App. Sept. 23, 2003). The court concluded that the petitioner abandoned this issue on appeal, but even if this issue was not abandoned, it lacked merit because the petitioner had opened the door to evidence of his cocaine usage through his chosen defense, where he claimed that Redwood and Hammer had accompanied him to smoke crack cocaine. In addition, the testimony about the petitioner's actions on the evening before the assaults, and the reactions of Redwood and others, was probative of Redwood's state of mind the following day when the petitioner contended that she consented to the sexual acts.

This analysis is sound. The prosecutor did not commit misconduct by presenting evidence of the petitioner's prior acts. The prosecutor was entitled to pursue a line of questioning that elicited evidence relevant to the elements of the crimes and the petitioner's claimed defenses. *See Cristini v. McKee,* 526 F.3d 888, 900 (6th Cir. 2008) (determining that the prosecutor did not engage in misconduct by commenting on the defendant's prior assaultive conduct in his opening and closing

arguments in a prosecution for second-degree murder, where the trial court had previously ruled that such bad acts were relevant to establish the identity of the perpetrator).

Nor did the prosecutor commit misconduct by highlighting the cocaine use or the prior threats made by the petitioner. The petitioner's defense that he had used cocaine with Redwood and Hammer invited questions about his prior drug use. He is not entitled to habeas relief on this portion of his claim. *See United States v. Jacobs,* 244 F.3d 503, 508 (6th Cir. 2001). As a matter of state law, a prosecutor may introduce evidence of a prior threat without running afoul of Rule 404(b) because statements are not "acts" and therefore do not implicate the rule. *People v. Rushlow*, 179 Mich. App. 172, 176, 445 N.W.2d 222, 224 (1989) (citing *People v. Goddard*, 429 Mich. 505, 518, 418 N.W.2d 881, 887 (1988)). The prosecutor commits no misconduct merely by pursuing evidence valid under state law.

The petitioner next contends that the prosecutor's questions about the petitioner's employment history and job status were improper. The Michigan Court of Appeals rejected this argument, finding that this evidence was admissible to rebut the petitioner's contention that he took Newman's money under a claim of right because he had previously paid Newman's prior drug debt. The prosecutor was entitled to impeach the petitioner on this claim with evidence touching on his ability to pay. Because this evidence was ruled admissible as a matter of state law, the prosecutor did not commit misconduct by questioning the petitioner about his employment status.

The petitioner next claims that the prosecutor improperly denigrated defense counsel when he responded to defense counsel's characterization of the prosecution witnesses as "crackheads." The prosecutor argues that defense counsel was demeaning the prosecution witnesses so that the jury

would find them unworthy of the law's protection.  In closing argument, the prosecutor made the following argument:

> You hear the defendant try to run down the witnesses that testified here, the people that testified in this case by constantly referring to them as crackheads to try to demean them in your view in the hopes that you will have so little concern for their safety, for their positions in this world as human beings, to make them less than human, to hope that you perhaps won't care, and that you'll decide that the law does not protect these people and that the law will not apply so that this man could do what he wanted to them because they aren't worthy of your concern or your time.

> The law protects everybody equally.  It protects Paul Hammer.  It protects Michael Newman.  It protects Christine Redwood, and it protects the defendant who's sitting in this courtroom to have you judging this case and basing your decision on one thing alone, and that's the evidence in this case.

Trial Tr., 8/14/01, at 80-81.  The Michigan Court of Appeals rejected the petitioner's argument, finding that – when considered in context – the prosecutor was simply arguing that the jury should decide the case on the basis of whether the witnesses were credible, regardless of their status.  That is entirely appropriate and a correct statement of the law.

Although prosecutors may not "make unfounded and inflammatory attacks on the opposing advocate," *United States v. Young*, 470 U.S. 1, 9 (1985), the comments in dispute here occurred during the prosecutor's closing rebuttal argument and were directed at the substance of the defense argument itself.  Prosecutors ordinarily are "entitled to wide latitude in rebuttal argument[s] and may fairly respond to arguments made by defense counsel."  *Angel v. Overberg*, 682 F.2d 605, 607-08 (6th Cir. 1982).

There is little likelihood that the statements would mislead the jury or prejudice the defendant.  The prosecutor was free to invite the jury to give fair consideration to each individual, whether they had a drug habit or not.  In context, the statements attacked only defense counsel's

arguments, not defense counsel or the petitioner personally. *See United States v. Xiong,* 262 F.3d 672, 675 (7th Cir. 2001). The remarks did not amount to misconduct.

Finally, the petitioner contends that he is entitled to habeas relief because of the cumulative effect of the prosecutor's remarks. Since the Court found the remarks to be proper, it follows that the cumulative effect of all of these instances of alleged misconduct did not rise to the level of flagrancy or otherwise violate the petitioner's due process rights. Accordingly, the petitioner is not entitled to habeas relief on this claim.

The Court will likewise reject the petitioner's seventh claim that counsel was ineffective for failing to object to these instances of alleged misconduct. In assessing whether the petitioner was deprived of the effective assistance of counsel, the petitioner must show that counsel's performance was defective and that he was prejudiced as a result. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Because the prosecutor's conduct was not improper, counsel's failure to object to the prosecutor's comments and questions did not amount to ineffective assistance. *See Meade v. Lavigne,* 265 F. Supp. 2d 849, 866 (E.D. Mich. 2003).

To the extent that the petitioner contends that the trial court violated Michigan Rule of Evidence 404(b), habeas relief will not lie. It is well-established that "federal habeas corpus review does not lie for errors of state law." *Estelle v. McGuire*, 502 U.S. 62, 67 (1991) (quoting *Louis v. Jeffers*, 497 U.S. 764, 780 (1990)). The Sixth Circuit has held that "[i]n a habeas corpus proceeding, it is not the province of a federal appellate court to review the decision of the state's highest court on purely state law." *Long v. Smith*, 663 F.2d 18, 22-23 (6th Cir. 1981). "When an evidentiary ruling is so egregious that it results in a denial of fundamental fairness, it may violate due process and thus warrant habeas relief." *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003). "Habeas

review does not encompass state court rulings on the admission of evidence unless there is a constitutional violation." *Clemmons v. Sowders*, 34 F.3d 352, 357 (6th Cir. 1994) (citing *Fuson v. Jago*, 773 F.2d 55, 59 (6th Cir. 1985)).  No error of a constitutional dimension has been alleged here. Accordingly, the petitioner is not entitled to habeas relief on his fifth or his seventh claims.

E.

In his sixth issue, the petitioner contends that the trial court's erroneous refusal to dismiss the extortion charges violated his right under the Double Jeopardy Clause.  He argues that the charges of kidnapping and first-degree criminal sexual conduct share the same element of force as the charges of extortion do, and therefore it was improper for the jury to consider all of these charges.

The Michigan Court of Appeals rejected the petitioner's claim on several grounds.  First, with respect to the extortion conviction involving Paul Hammer, the court noted that the petitioner was found not guilty of kidnapping Hammer, so there could be no multiple conviction.  With regard to the extortion conviction involving Christine Redwood, the court noted that the petitioner was charged with four separate counts of first-degree criminal sexual conduct, each based on a separate sexual penetration, but that he was only convicted of one count of first-degree criminal sexual conduct.  The court reasoned that the extortion conviction could have been based on a forced act of sexual penetration that was independent of the basis for the first-degree criminal sexual conduct conviction.

The Fifth Amendment to the United States Constitution commands that no "person be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. amend. V.  The Double Jeopardy Clause, which is applicable to the states through the Due Process Clause of the Fourteenth

Amendment, *see Benton v. Maryland*, 395 U.S. 784, 794 (1969), provides three basic protections: "[it] protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense." *N. C. v. Pearce*, 395 U.S. 711, 717 (1969) (footnotes omitted); *see also Ohio v. Johnson*, 467 U.S. 493, 497-98 (1984). "These protections stem from the underlying premise that a defendant should not be twice tried or punished for the same offense." *Schiro v. Farley*, 510 U.S. 222, 229 (1994) (citing *United States v. Wilson*, 420 U.S. 332, 339 (1975)).

However, "a single transaction can give rise to distinct offenses under separate statutes without violating the Double Jeopardy Clause." *Albernaz v. United States*, 450 U.S. 333, 344 n.3 (1981). "While the Double Jeopardy Clause may protect a defendant against cumulative punishments for convictions on the same offense, the Clause does not prohibit the State from prosecuting respondent for such multiple offenses in a single prosecution." *Ohio v. Johnson,* 467 U.S. 493, 500 (1984); *see also Ball v. United States*, 470 U.S. 856, 860 n.8 (1985) ("'there can be no impropriety . . . for a prosecutor to file an information containing counts charging violations of' several different provisions of the federal bank robbery statute where there is evidence to support the charges, even though the defendant could not in the end stand convicted of both offenses" (quoting *United States v. Gaddis*, 424 U.S. 544, 550 (1976)) (alteration in original)). If a jury convicts a defendant of no more than one of the multiplicitous counts charged in an indictment or information, there is no violation of a defendant's right to be free from double jeopardy, because he or she will be subjected to no more than one punishment. *See United States v. Josephberg*, 459 F.3d 350, 355 (2d Cir. 2006).

The petitioner claims that the charge of extortion of Paul Hammer is subsumed within the charge of kidnapping him, thereby subjecting the petitioner to double jeopardy. However, the petitioner was subjected to only one trial, where he was acquitted of kidnapping Hammer, so there is no possibility that he will be subjected to multiple convictions or punishments. The failure to instruct the jury on the particulars of the Double Jeopardy Clause is not a violation of due process. *See Ohio v. Johnson*, 467 U.S. at 500.

The petitioner also argues that he could not have been convicted of both first-degree criminal sexual conduct against Christine Redwood and of extortion against her. The petitioner was convicted of one act of criminal sexual conduct against Christine Redwood, but acquitted of three others. As the state appellate court noted, the extortion conviction involving Christine Redwood could have involved one of the acts of sexual penetration, an act of force, that did not lead to a conviction for first-degree criminal sexual conduct. The petitioner again has failed to show a violation of the Double Jeopardy Clause. The petitioner is not entitled to habeas relief on his sixth claim.

F.

In his eighth claim, the petitioner contends that he was improperly charged with criminal sexual conduct when the victim was his spouse. The Michigan statute was amended in 1988 to "abolish[] spousal immunity in prosecutions for criminal sexual conduct . . . ." *People v. Ullah*, 216 Mich. App. 669, 670 n.1, 550 N.W.2d 568, 570 n.1 (1996). At the time of the petitioner's conviction (and presently), section 750.520*l*, stated: "A person may be charged and convicted [of criminal sexual conduct] even though the victim is his or her legal spouse." Mich. Comp. Laws § 750.520*l*.

The petitioner's claim that he is legally entitled under Michigan law to rape his wife is without merit. The petitioner is not entitled to habeas relief on this claim.

G.

In his tenth claim, the petitioner contends that the trial court failed to instruct the jurors on the element of asportation required to support his conviction for kidnapping. He believes that state law required an instruction that in order to convict petitioner of kidnapping his wife, the jury must find that any movement by the petitioner of his wife was not for the purpose of committing the first-degree criminal sexual conduct upon his wife.

An erroneous jury instruction warrants habeas corpus relief only where the instruction "'so infected the entire trial that the resulting conviction violates due process.'" *Estelle v. McGuire*, 502 U.S. 62, 72 (1991) (quoting *Cupp v. Naughten*, 414 U.S. 141, 147 (1973)). "[I]t must be established not merely that the instruction is undesirable, erroneous, or even 'universally condemned,' but that it violated some [constitutional] right." *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974). The jury instruction "'may not be judged in artificial isolation,' but must be considered in the context of the instructions as a whole and the trial record." *Estelle*, 502 U.S. at 72 (quoting *Cupp*, 414 U.S. at 147).

Under Michigan law, the movement necessary to satisfy the element of asportation for kidnapping must not be merely incidental to the commission of an underlying lesser or co-equal crime other than an underlying crime involving murder, extortion, or taking a hostage. *See People v. Robbins,* 131 Mich. App. 429, 432, 346 N.W.2d 333, 334 (1984) (citing *People v. Barker*, 411 Mich. 291, 307 N.W.2d 61 (1981); *People v. Adams*, 389 Mich. 222, 205 N.W.2d 415 (1973)).

In the present case, as part of the instructions on kidnapping, the judge instructed the jurors that one of the elements of the crime of kidnapping was that the petitioner "forcibly moved or caused Paul Hammer and/or Christine Redwood to be moved from one place to another for the purpose of kidnapping, extortion, and/or murder." Trial Tr., 8/15/2001, at 17. Although not perfect, the instruction adequately conveyed to the jurors that any movement of the victims would have to be for the purpose of kidnapping, extortion, or murder, and not merely incidental to one of the other felony offenses. Because the instruction under state law was not erroneous, there could be no due process violation. The petitioner therefore is not entitled to habeas relief on his tenth claim.

## H.

In his eleventh claim, petitioner brings several additional challenges to his sentence. He first contends that the trial court incorrectly scored Offense Variable (OV) 4 of the Michigan Sentencing Guidelines. The claim that the state trial court incorrectly scored or calculated his sentencing guidelines range under the Michigan Sentencing Guidelines is not a cognizable claim for federal habeas review, because it is based solely on state law. *See McPhail v. Renico,* 412 F. Supp. 2d 647, 656 (E.D. Mich. 2006). Although the petitioner had a constitutional right not to be sentenced on "misinformation of constitutional magnitude," *Roberts v. United States*, 445 U.S. 552, 556 (1980) (quoting *United States v. Tucker*, 404 U.S. 443, 447 (1972)), the essence of his argument is that the trial court mis-scored the sentencing guidelines. "A federal court may not issue the writ on the basis of a perceived error of state law," *Pulley v. Harris*, 465 U.S. 37, 41 (1984), and a claim that the trial court mis-scored offense variables in determining the state sentencing guidelines is not cognizable on habeas corpus review. *See Cook v. Stegall*, 56 F. Supp. 2d 788, 797 (E.D. Mich. 1999).

The petitioner also contends that the trial court judge violated his Sixth Amendment right to a trial by jury by using factors to score OV 4 which had not been submitted to a jury and proven beyond a reasonable doubt or admitted to by petitioner. The petitioner believes that *Blakely v. Washington,* 542 U.S. 296 (2004), and *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000), support his position. However, the claim that Michigan's sentencing guideline system, wherein judge-found facts are used to establish the minimum sentence of an indeterminate sentence, violates the Sixth Amendment has been foreclosed by the Sixth Circuit's decision in *Chontos v. Berghuis*, 585 F.3d 1000, 1002 (6th Cir. 2009) ("[The petitioner] argues that the Michigan trial judge violated *Apprendi* by finding facts that raised his minimum sentence. But *Harris v. United States* tells us that *Apprendi*'s rule does not apply to judicial factfinding that increases a minimum sentence so long as the sentence does not exceed the applicable statutory maximum."). This Court is bound by that decision. Because the petitioner's sentence fell within the statutorily-authorized maximum penalty, which was not enhanced by judicial factfinding, no Sixth Amendment violation occurred.

The petitioner also contends that his sentence was enhanced with convictions that had been obtained without the benefit of counsel. The use of uncounselled convictions to enhance punishment is prohibited by clearly established federal law. *Burgett v. Texas*, 389 U.S. 109, 115 (1967) ("To permit a conviction obtained in violation of Gideon v. Wainwright to be used against a person either to support guilt or enhance punishment for another offense . . . is to erode the principle of that case."). However, the burden is on the petitioner to overcome the presumption of regularity that attaches to prior court proceedings and prove the invalidity or unconstitutionality of the prior convictions. *Parke v. Raley*, 506 U.S. 20, 31 (1992); *see also Johnson v. Zerbst*, 304 U.S. 458, 468-69 (1938); *Hobson v. Robinson,* 27 F. App'x 443, 445 (6th Cir. Oct. 31, 2001). Although the

petitioner alleges that he was not represented by counsel during prior proceedings, he never provided any evidence to this Court or the state trial court suggesting that the prior convictions were in fact obtained without counsel. The petitioner does not even specify which of his prior convictions were constitutionally invalid. Therefore, he has failed to establish that his sentence was enhanced on the basis of constitutionally invalid convictions. The petitioner is not entitled to habeas relief on his eleventh claim.

## I.

Lastly, the petitioner contends that his appellate counsel was ineffective for failing to raise certain arguments on direct appeal. The Supreme Court has held that a criminal defendant does not have a constitutional right to have appellate counsel raise every non-frivolous issue on appeal. *Jones v. Barnes*, 463 U.S. 745 (1983). The Court explained:

> For judges to second-guess reasonable professional judgments and impose on appointed counsel a duty to raise every "colorable" claim suggested by a client would disserve the very goal of vigorous and effective advocacy. . . . Nothing in the Constitution or our interpretation of that document requires such a standard.

*Id.* at 754. Strategic and tactical choices regarding which issues to pursue on appeal are "properly left to the sound professional judgment of counsel." *United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990).

This Court has already ruled that petitioner's eighth, ninth, tenth, and eleventh claims lack merit. "Counsel could not be [ ]constitutionally ineffective for failing to raise these meritless arguments." *Mapes v. Coyle*, 171 F.3d 408, 427 (6th Cir. 1999).

## IV.

The petitioner has not established that he is in custody in violation of the Constitution or laws of the United States.

Accordingly, it is **ORDERED** that the petition for a writ of habeas corpus [dkt # 1] is

**DENIED**.

s/David M. Lawson

DAVID M. LAWSON
United States District Judge

Dated: March 29, 2010

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on March 29, 2010.

s/Teresa Scott-Feijoo
TERESA SCOTT-FEIJOO